## S08A0658. THE STATE v. DARBY.
### (663 SE2d 160)

CARLEY, Justice.

While investigating the fatal shooting of Alexys Anderson, the police learned of the possible involvement of Damorrial Darby. Accompanied by his parents, Darby, who was nineteen years old, surrendered to the authorities. Officers Simms and Walker placed him under arrest for murder, and separated him from his parents for questioning. After the officers explained his rights in accordance with the procedure mandated by *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), Darby stated that he wished to speak with a lawyer. Then, however, he spontaneously asked why he was being charged with the murder of Mr. Anderson and stated "there's no way I could be doing this." At that point, the officers told him: "[I]f you want to tell us your side of the story you can — you know, you can sign off on a waiver and tell us your side of the story. . . ." Darby indicated that he did want to make a statement, and he executed a written waiver of his rights.

Under questioning, Darby denied participation in the shooting of Mr. Anderson. Eventually, he became upset and started crying. When he asked to see his parents, the officers told him that, as an adult, he could not have them present at the interrogation. Darby then invoked his right to counsel, and the questioning immediately ceased. Darby was booked into jail, and the interrogating officers made a note to the effect that he wished to speak with his mother.

Officer Adkison, who was in charge of the homicide investigation, subsequently arrived to transport Darby to his preliminary hearing. That officer was aware of Darby's request to speak with his mother. Apparently, however, he did not know that the prior interview had ended with Darby's request for an attorney. According to Officer Adkison, upon meeting with Darby, he went "over the rules and the regs and the procedures [regarding the preliminary hearing]. . . . And after that process [Darby] asked would he be able to speak with his mother." The officer also stated:

> We brought him back preparing him for his hearing and he stated that he wanted to talk to his mother. He was talking — he wanted to talk to us, but he wanted to talk to his mother as well. . . . If I'm correct I believe he stated I'm willing to talk to you as long as I can talk to my mother.

While awaiting the arrival of Darby's mother, the questioning began. Officer Adkison did not obtain another express waiver of *Miranda* rights, but he did produce the *Miranda* form and waiver Darby had previously executed. Darby acknowledged the waiver and his execution of it. In the ensuing interrogation, Darby gave an inculpatory statement regarding his involvement in Mr. Anderson's homicide. When his mother arrived, their meeting was videotaped. In that meeting, he made incriminating admissions to her as well.

Darby filed a pre-trial motion to suppress his statements to the officers and his conversation with his mother. The trial court conducted a hearing, at which only the three officers who had questioned him testified. Based on the testimony at that hearing, the trial court found that all of the statements made to the officers and the tape of the conversation with Darby's mother were inadmissible under *Miranda v. Arizona*, supra, and *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981). The State appeals from the trial court's order.

1. The trial court found the custodial statements inadmissible for several reasons, one of which was that Officers Simms and Walker erroneously informed Darby that he had to sign the *Miranda* waiver before making a statement.

As the trial court correctly held, that was erroneous because a suspect can always make a spontaneous, voluntary statement which would be admissible at trial. *Zubiadul v. State*, 193 Ga. App. 235, 236-237 (387 SE2d 431) (1989). Thus, the correct response to Darby would have been that he could make a voluntary statement, but that he could not be interrogated by the officers, without signing the waiver.

Once Darby invoked the right to counsel, his responses to further questioning by Officers Simms and Walker "may be admitted only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. [Cits.]" *Zubiadul v. State*, supra at 236. The trial court was authorized to find that Darby did not knowingly and intelligently waive his Sixth Amendment right by executing the *Miranda* waiver, because he signed that document only after receiving the erroneous information that it was a precondition to telling his "side of the story."

2. The trial court found that the subsequent statement given to Officer Adkison was inadmissible under *Edwards*, supra, because that officer "initiated conversation with [Darby] by telling him what to expect at the [preliminary] hearing."

> [A]n analysis of whether a suspect who has invoked his right to counsel under *Miranda*, supra, has later waived

that right proceeds in two steps. First, a determination as to whether the *defendant* initiated further talks with the police, and second, if so, whether his waiver was shown to be voluntary under the totality of the circumstances. [Cits.] (Emphasis in original.)

*Sanders v. State*, 182 Ga. App. 581, 582 (1) (356 SE2d 537) (1987). The State urges that *Edwards* is inapplicable because Officer Adkison did not initiate interrogation about Mr. Anderson's murder, but began the conversation simply by providing Darby with information regarding the scheduled preliminary hearing. As the trial court noted, however, in opening up the dialogue, the officer was not engaging in "routine inquiry concerning identification of [Darby's] family members, having nothing to do with the criminal investigation . . . ." *Hibbert v. State*, 195 Ga. App. 235, 236 (393 SE2d 96) (1990). Instead, the very purpose of the preliminary hearing was to address Darby's arrest and probable guilt for Mr. Anderson's murder. The trial court found that Officer

Adkison picked up [Darby] from the jail for the five minute ride to his first appearance hearing more than ninety minutes before the hearing was scheduled. He was taken not to the Magistrate Court but to police headquarters, where he was placed in an interrogation room. [Officer] Adkison initiated conversation with [Darby] by telling him what to expect at the hearing. . . . [The officer] was not empowered to spontaneously advise [Darby] about his legal situation at the hearing. This information, properly obtained from the judge or through requested counsel, does not fall within the boundaries of the "booking exception" from *Miranda*, nor does it serve any other administrative function. Indeed, the only function served by this communication was to reestablish communication between the police and [Darby].

The trial court, having considered the totality of the circumstances and assessing the credibility of Officer Adkison's testimony, was authorized to find that, in violation of *Edwards*, the police, rather than Darby, reinitiated interrogation after he invoked his Sixth Amendment right to counsel. " 'A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to interrogation. . . .' [Cit.]" *Hibbert v. State*, supra. It is immaterial that the officer may not have been aware that the initial interview ended with Darby's invocation of his right to an attorney. *Roper v. State,* 258 Ga. 847, 850 (1) (a) (375

SE2d 600) (1989). Likewise, it does not matter that, prior to the questioning, Officer Adkison showed Darby his previously executed *Miranda* waiver form which Darby acknowledged. As held in Division 1, that waiver was invalid because, due to the erroneous information given to Darby, it did not represent a knowing and intelligent waiver of his Sixth Amendment rights. Moreover, even if the waiver was valid, Darby's statement would still not be admissible, because it was the product of interrogation initiated by Officer Adkison. See *Sanders v. State*, supra (admissibility of statement made after request for counsel requires a two-step determination).

3. The trial court found the videotape of the meeting between Darby and his mother to be inadmissible because it

> shows that, despite [Officer] Adkison's constant urging, [Darby] would not talk to his mother about the events surrounding the victim's death. [Officer] Adkison finally repeated to [Darby's] mother what her son had told them during the second interrogation. All the dialogue between [Darby] and his mother was based on [Officer] Adkison's recital of the events obtained from the illegal interview. Therefore, the dialogue between [Darby] and his mother . . . is excluded from the trial as fruits of an illegal interrogation.

The trial court did not err in characterizing the second interrogation as "illegal," since the requirements of *Edwards* were not met for the reasons discussed in Division 2. "[H]owever, 'the "fruit" of a voluntary statement obtained in violation of *Edwards v. Arizona* is not subject to the exclusionary rule. (Cits.)' [Cit.]" *State v. Woods*, 280 Ga. 758, 759 (632 SE2d 654) (2006). Nevertheless, the videotape is not merely a "fruit" of the illegal interrogation. If, under *Edwards*, Darby's statement would not be admissible directly, it could not be admitted indirectly in the form of Officer Adkison's recital on the videotape of what Darby had said to him during the illegal interview, followed by a discussion between Darby and his mother of his inculpatory admissions. "It is a general rule that one cannot do indirectly that which the law does not allow to be done directly." *Richmond County v. McElmurray*, 223 Ga. 440, 443 (1) (156 SE2d 53) (1967).

However, only so much of the conversation between Darby and his mother as was, in effect, a recap of the interrogation by Officer Adkison would be inadmissible. See *Cook v. State*, 270 Ga. 820, 826 (2) (514 SE2d 657) (1999). Although the trial court's order states that "all" of the conversation between Darby and his mother was premised on what Officer Adkison told her transpired during the

interview, that is inaccurate. The meeting between Darby and his mother did not commence with the officer's recital of what he had learned from the interrogation. The trial court seemingly recognized that when it stated that Officer Adkison "finally repeated" to Darby's mother the inculpatory admissions her son made during the unauthorized interview. Any exchange between Darby and his mother prior to the officer "finally repeat[ing]" the contents of the illegal interrogation would be "admissible under *Miranda* and *Edwards*. [Cit.]" *Cook v. State*, supra at 828 (2). Therefore, the trial court's order holding the videotape to be inadmissible in its entirety is reversed to the limited extent that it excludes dialogue between Darby and his mother that was not based on Officer Adkison's recital of the events which occurred during the impermissible questioning.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED JUNE 30, 2008 —
RECONSIDERATION DENIED JULY 25, 2008.

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney, Thurbert E. Baker, Attorney General,* for appellant.

*Michael R. Hauptman,* for appellee.