S12A1504. BUNNELL v. THE STATE.
(735 SE2d 281)

HUNSTEIN, Chief Justice.

A Walton County jury convicted Jeffrey Jay Bunnell of malice murder and tampering with the evidence in connection with the beating death of 70-year-old Margie Eason.[1] Bunnell challenges the trial court's rulings admitting into evidence his videotaped statement to police, the hearsay testimony of three witnesses, testimony about a driver's license suspension for driving under the influence, and post-autopsy photographs. Because the trial court did not err in its evidentiary rulings, we affirm.

1. The evidence presented at trial shows that Bunnell, who was 46 years old at the time of his arrest, had lived with Eason for approximately seven years and taken care of her in exchange for room and board. Each had purchased a $10,000 to $15,000 life insurance policy that listed the other person as beneficiary. Sometime after 4:00 p.m. on the day Eason died, Bunnell rang the doorbell of their neighbor Roy Huff and asked to borrow five dollars to buy cigarettes. A video surveillance shot shows Bunnell in a nearby

---

[1] The crimes occurred on October 12, 2010. On December 17, 2010, the grand jury indicted Bunnell for malice murder, felony murder, aggravated assault, and tampering with evidence. A jury found him guilty on all four counts on May 11, 2011, and the trial court sentenced him to life imprisonment without parole on the malice murder count and a twelve-month term of imprisonment on the tampering charge; the remaining two counts merged or were vacated by operation of law. Bunnell filed a motion for new trial on June 8, 2011, which was amended on November 22, 2011 and denied on April 4, 2012. He filed a notice of appeal on April 10, 2012. The case was docketed to the Court's September 2012 term and submitted for decision on the briefs.

convenience store at 4:52 p.m., and a store clerk remembered Bunnell purchasing cigarettes and beer that afternoon. Huff testified that Bunnell called around 5:00 p.m. to report that someone had killed Eason while he was out. Police received the 911 call from Bunnell at 6:05 p.m. Arriving at Eason's home, they found her slumped over the arm of a couch bleeding profusely from her head and cold to the touch; a piece of glass from a broken light fixture was found in her lap. A wooden ax handle with blood and hairs on its head was lying in a pool of blood next to the couch, and broken glass, dog hair, blood, and other debris had been swept into a pile on the floor. Although Eason always kept her doors locked, police found no signs of forced entry, the house had not been ransacked, and no items of value appeared to be missing. In addition, none of her neighbors reported seeing anyone out of place in the neighborhood. In a videotaped interview played at trial, Bunnell told police that Eason was "ranting and raving about money," then picked up the ax handle and swung at him. He grabbed the stick, pushed her down, and hit her in the temple with it. Before going to the store, he changed his shirt and swept the broken glass into a pile. The medical examiner testified that Eason died of blunt traumatic injuries to the head.

Although Bunnell contends that the State failed to present sufficient evidence to exclude the reasonable hypothesis that he was not present when Eason was killed, it is generally the jury's role to decide whether a hypothesis is reasonable. See *Foster v. State*, 273 Ga. 34 (1) (537 SE2d 659) (2000). Moreover, Bunnell's argument that the State relied solely on circumstantial evidence is belied by the admission of his statement to police that he hit Eason with the ax handle. See *Wallace v. State*, 279 Ga. 26 (1) (608 SE2d 634) (2005) (defendant's reliance on circumstantial evidence rule of OCGA § 24-4-6 was misplaced because his own statement was direct evidence of his guilt). After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that the evidence was sufficient to authorize a rational trier of fact to find Bunnell guilty beyond a reasonable doubt of the crimes charged. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Bunnell contends that the trial court erred in denying his motion to suppress the statement he made to law enforcement officers. Specifically, he alleges that an investigating officer misstated the law during questioning when she told him that "this is your time, your opportunity to tell me what happened . . . . After tonight you may not get another opportunity to tell me what happened." Citing *State v. Darby*, 284 Ga. 271 (663 SE2d 160) (2008), he argues that this erroneous legal information and his altered state of mind means that he did not make his statements freely and voluntarily.

Whether a defendant waives his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and makes a voluntary and knowing statement depends on the totality of the circumstances. *Vergara v. State*, 283 Ga. 175 (657 SE2d 863) (2008). "In ruling on the admissibility of an in-custody statement, a trial court must determine whether . . . a preponderance of the evidence demonstrates that the statement was made freely and voluntarily." *Humphreys v. State*, 287 Ga. 63, 73 (6) (694 SE2d 316) (2010) (citation and punctuation omitted). Unless clearly erroneous, we accept the trial court's factual findings and credibility determinations relating to the admissibility of the defendant's statement. Id. When controlling facts discernible from a videotape are not disputed, our standard of review is de novo. *Sosniak v. State*, 287 Ga. 279 (1) (695 SE2d 604) (2010).

In this case, the trial court found that Bunnell was read his *Miranda* rights, signed a form waiving those rights, was alert and coherent in answering questions, was not impaired by alcohol and prescription drugs taken hours earlier, and understood what he was doing when he waived his rights and agreed to talk to officers. The trial court concluded that Bunnell was properly advised of his rights, he knowingly and intelligently waived those rights, and police made no promises or threats to induce him to speak. Unlike the *Darby* case, where officers erroneously told the defendant that he would have to sign a waiver form before he gave a statement to police, see 284 Ga. at 272, the officer in this case did not mislead Bunnell or give him erroneous legal information when she said that this was his opportunity to tell her his side of the story before other persons were interviewed and began telling their version of events. See *Wilson v. State*, 285 Ga. 224, 228 (3) (675 SE2d 11) (2009) (interrogator's statement "to 'help yourself out' is an encouragement to tell the truth" and not an improper hope of benefit). Because the totality of the circumstances shows that Bunnell gave his statement knowingly and voluntarily, the trial court did not err in denying his motion to suppress.

3. Bunnell next challenges the admission of hearsay evidence by three witnesses concerning statements that Eason made about her relationship with Bunnell. OCGA § 24-3-1 (b) provides that hearsay evidence "is admitted only in specified cases from necessity."[2] For

---

[2] This section was repealed under the new Georgia Evidence Code, which took effect on January 1, 2013. The applicable law is now the residual exception under OCGA § 24-8-807. It provides that a statement that is not specifically covered by any law and has "equivalent circumstantial guarantees of trustworthiness" shall not be excluded if (1) the statement is offered as evidence of a material fact, (2) it is more probative on the point than any other

hearsay to be admitted under the necessity exception, the proponent of the evidence must show that the declarant's statement is relevant and more probative of a material fact than other available evidence and that it exhibits particular guarantees of trustworthiness. *McNaughton v. State*, 290 Ga. 894 (3) (725 SE2d 590) (2012). Whether a statement is trustworthy is a matter for the trial court's discretion, and the trial court's decision will not be disturbed on appeal unless there is an abuse of discretion. *Gibson v. State*, 290 Ga. 6 (3) (717 SE2d 447) (2011).

> The trial court does not abuse its discretion when it uses the necessity exception to admit hearsay testimony that relates an uncontradicted statement made by the unavailable witness to one in whom the declarant placed great confidence and to whom the declarant turned for help with problems.

*Myers v. State*, 275 Ga. 709, 712 (2) (572 SE2d 606) (2002).

(a) Eason's daughter, Teresa Thompson, testified about her mother's recent request to borrow money and statements that her mother had made concerning her relationship with Bunnell. Thompson testified that she and her mother were close despite their "little ins and [outs]," talked or saw each other on a regular basis, and "were always there if we ever needed each other," and Eason discussed her medical, financial, and other problems with her daughter. Admitting the evidence, the trial court found that it was relevant to the state of the relationship between Eason and Bunnell, more probative of that material fact than other evidence, and was trustworthy because Eason confided in her daughter. We conclude the trial court did not abuse its discretion in admitting Thompson's testimony into evidence. See *McNaughton*, 290 Ga. at 898 (upholding admissibility of mother's uncontradicted statements to daughters because evidence showed the victim had a close family relationship with the witnesses and regularly confided in them).

(b) Marcy Whitlock, who had lived next door to Eason for twenty months and considered her to be "like a grandmother," testified that two or three times a week Eason would bring up her relationship with Bunnell, saying "numerous times" that he was hateful to her and was "stressing her out." Whitlock talked with Eason every day, drove her

---

evidence that can be procured through reasonable efforts, and (3) admission of the statement will serve the general purposes of the rules of evidence and the interests of justice. The proponent must make known sufficiently in advance of trial that he intends to offer the statement at trial and provide to the adverse party its particulars, including the declarant's name and address.

to the store, ran errands for her, and brought her children to Eason's house to play. Although Whitlock described the relationship between Eason and Bunnell as a friendship, whereas Thompson testified that her mother once said she loved Bunnell, this purported inconsistency did not render unreliable Eason's statements about Bunnell's conduct toward her. Under the totality of the circumstances, we conclude that the trial court did not abuse its discretion in finding Eason's statements to Whitlock reliable and admissible. See *Watson v. State*, 278 Ga. 763 (2) (a) (604 SE2d 804) (2004) (admitting hearsay testimony despite the victim's inconsistent statements about a broken arm when there was a logical explanation for the inconsistencies and the victim never recanted her reports of abuse by the defendant).

(c) Huff testified that on the day she died Eason told him that Bunnell wanted money and would beat her up if she did not give him any. Huff considered Eason a close friend and talked to her on the phone nearly every day; she confided in him about health and other personal matters, he had loaned her $600 in September without asking any questions, and he testified that Bunnell never had a kind word for Eason and was "smart with her." Based on the evidence, Bunnell has not shown that the trial court abused its discretion in concluding that Eason's statements to Huff bore sufficient indicia of trustworthiness to be admissible. See *McPherson v. State*, 274 Ga. 444 (10) (553 SE2d 569) (2001) (guaranty of trustworthiness shown by testimony that witnesses were close friends with victim and she routinely confided in them about her personal life); *Abraha v. State*, 271 Ga. 309 (2) (518 SE2d 894) (1999) (statements victim made to neighbor who was a good friend and confidant bore sufficient indicia of reliability and trustworthiness).

4. Bunnell contends that the trial court should have granted a mistrial after the State placed his character into evidence. Specifically, he objected when a police officer testified that he ran Bunnell's "information[ ] through dispatch and . . . Mr. Bunnell returned with a DUI suspension." Finding the testimony was unresponsive to the prosecutor's question and unrelated to the charges against Bunnell, the trial court offered to give a curative instruction, which Bunnell declined.

Whether to grant a mistrial based on improper character evidence is within the discretion of the trial court. *Stanley v. State*, 250 Ga. 3 (2) (295 SE2d 315) (1982). We have held that curative instructions are an adequate remedy when a witness inadvertently refers to a defendant's prior convictions or criminal acts. See *Sims v. State*, 268 Ga. 381 (2) (489 SE2d 809) (1997). Here, the officer's reference to the suspension of Bunnell's driver's license for driving under the influence appears to have been inadvertent, and the trial court gave the

defendant the option of a curative instruction. Based on these findings and the overwhelming evidence of guilt, the trial court did not abuse its discretion in denying the motion for mistrial. See *Kerdpoka v. State*, 314 Ga. App. 400 (2) (724 SE2d 419) (2012) (no abuse of discretion when court gave a prompt curative instruction after witness testified inadvertently that defendant had been arrested for a DUI charge that was unrelated to the charges against him); *Browning v. State*, 236 Ga. App. 893 (2) (513 SE2d 779) (1999) (same).

5. Finally, Bunnell argues that the post-autopsy photographs should not have been allowed into evidence because they were cumulative and inflammatory. A photograph that depicts the victim after autopsy incisions or after the pathologist changes the state of the body is admissible when "necessary to show some material fact which becomes apparent only because of the autopsy." *Brown v. State*, 250 Ga. 862, 867 (5) (302 SE2d 347) (1983). In this case, the medical examiner testified that she could see the nature and extent of the injuries to the head only after she retracted the scalp to expose the multiple fractures to the skull and internal bleeding. We conclude the trial court did not abuse its discretion in admitting photographs to show these material facts. See *Carr v. State*, 265 Ga. 477 (1) (457 SE2d 559) (1995) (holding autopsy photographs of skull admissible to show material facts concerning the cause of death from blunt head trauma).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 2013.

*Anthony S. Carter*, for appellant.

*Layla H. Zon, District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Bikoff, Anne M. Kurtz, Assistant Attorneys General,* for appellee.