**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 13, 2015**

# In the Court of Appeals of Georgia

A15A0990. JACKSON v. THE STATE.                    DO-037 C

DOYLE, Chief Judge.

Alexander Lorenzo Jackson was convicted of rape[1] and false imprisonment.[2] Jackson appeals, arguing that (1) the evidence was insufficient, and that the trial court erred (2) by finding his statement was admissible, (3) by denying his motion to bar the investigating officer from the courtroom pursuant to the rule of sequestration, (4) by failing to charge the jury on the rights of juveniles, and (5) by allowing the State to replay a recorded copy of his interrogation. For the reasons that follow, we affirm.

Following the denial of a motion for new trial,[3]

---

[1] OCGA § 16-6-1 (a) (1).

[2] OCGA § 16-5-41 (a). Jackson was acquitted of one count of battery.

[3] See *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[4] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[5]

So viewed, the evidence shows that on July 17, 2009, S. T., who was 17 years old at the time, arrived in the early morning hours at the home of Florence Smith[6] and slept for a few hours, sharing a bed with her female cousin, T. B. Around 10:00 or 11:00 a.m., S. T. awoke and went to the bathroom to take a shower. Jackson, who also was 17 years old at the time, followed S. T. into the bathroom, locking the door behind him. When S. T. verbally resisted, Jackson put a hand over her mouth to the point of causing her to bleed, removed her remaining clothes, and forcibly performed vaginal intercourse.

---

[4] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979),

[5] (Punctuation omitted.) *Traylor v. State*, 332 Ga. App. 441, 442 (773 SE2d 403) (2015), quoting *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

[6] Ms. Smith died prior to trial.

While this occurred, T. B. was attempting to get into the bathroom to find out what was going on, and she contacted some older relatives with the intent to tell them about what was transpiring. Those relatives later told Ms. Smith, who came home and made Jackson leave; another relative reported the incident to the police.

Jackson was interviewed by police later that day, and he acknowledged that he put at least the "head" of his penis in S. T.'s vagina, and although he conceded that he pushed his way into the bathroom, that he held S. T. to prevent her from leaving, that he covered her mouth with his hand to prevent her from screaming, he thought that at the time of the actual act S. T. was consenting to the intercourse. In the interview, Jackson conceded that he called S. T.'s mother and admitted he was wrong. Jackson was convicted of rape and false imprisonment, and this appeal followed.

1. Jackson contends that the trial court erred by determining that the statement he made to police was admissible. Jackson also argues that the trial court erred by denying his request to charge the jury as to the rights of juveniles.

(a) Relying on *J. D. B. v. North Carolina*,[7] Jackson contends that the trial court erred by finding that his *Mirandized*[8] statements to police were freely and voluntarily given because he was 17 years old at the time, which the trial court should have heavily weighed in its *Jackson-Denno*[9] analysis.

> In ruling on the admissibility of an in-custody statement, a trial court must determine whether a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, we accept the trial court's factual findings and credibility determinations relating to the admissibility of the defendant's statement. When controlling facts discernible from a videotape are not disputed, our standard of review is de novo.[10]

Here, Jackson was accompanied on the day of the incident to the police station by his aunt, and his step-father joined them there, and Jackson was separated from

---

[7] __ U. S. ___ , __ (II) (B) (131 SCt 2394, 180 LE2d 310) (2011) ("[S]o long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the custody analysis is consistent with the objective nature of that test.").

[8] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966)

[9] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

[10] (Citation and punctuation omitted.) *Bunnell v. State*, 292 Ga. 253, 255 (2) (735 SE2d 281) (2013), quoting *Humphreys v. State*, 287 Ga. 63, 73 (6) (694 SE2d 316) (2010), citing *Sosniak v. State*, 287 Ga. 279, 279-280 (1) (695 SE2d 604) (2010).

4

them only by a partition instead of being taken to a separate room. Agent Carl Murray, who conducted the interrogations, utilized a waiver form to advise Jackson of his *Miranda* rights prior to interviewing him.

Jackson specifically argues that he asked to have his step-father in the interview and wanted to speak with him prior to signing the waiver form and was prevented from doing so. But at the hearing, Jackson also acknowledged that he understood his rights at the time of the interrogation and he understood that he was waiving them. Jackson also acknowledged that he spoke with his step-father in the two-minute break between the first interview and the second.[11]

Based on the record before us, we cannot say that the trial court clearly erred by finding that Jackson was advised of his *Miranda* rights and that he voluntarily waived them without any hope of benefit, coercion, or fear of injury.[12] Although Jackson may have preferred to speak with his step-father prior to the interview, based on Jackson's own statements in the record, the trial court could conclude properly that

[11] Although there is an audio recording of the second portion of the interview, there is no recording of the first portion or the break during which time Jackson contends that he asked to speak with his step-father.

[12] See *Bunnell*, 292 Ga. at 255 (2) ("Whether a defendant waives his rights . . . and makes a voluntary and knowing statement depends on the totality of the circumstances.") (citation omitted).

he understood his rights and what he was waiving even without the benefit of speaking with his parent and even though he would not reach the age of majority for another year, which would only be factors among many for the court to weigh.[13] Accordingly, the trial court did not err by allowing the State to play the interview to the jury.

(b) Because we have determined that the trial court did not err by finding Jackson's statement admissible, and because Jackson presents no other argument against the second playing of the interrogation apart from his contention that the interrogation was involuntary, his argument that the second playing was erroneous is without merit.

(c) Jackson also argues that the trial court erred by declining to charge the jury as to knowing and voluntary waiver involving a minor.

Jackson requested that the trial court instruct the jury as to his constitutional rights regarding his interrogation:

---

[13] See *McKoon v. State*, 266 Ga. 149, 151 (2) (465 SE2d 272) (1996) ("This Court has held that there is no requirement that a parent be present during questioning of a minor. The absence of a parent is just one of nine factors that this Court considers.").

In considering whether a statement by a juvenile defendant was made with a knowing and intelligent waiver of his/her constitutional rights, you are to consider the totality of the circumstances. Factors you may consider to determine whether the defendant has made a knowing and intelligent waiver include but are not limited to (1) the age of the defendant, (2) the education of the defendant, (3) the knowledge of the defendant as to the substance of the charge and nature of his/her rights to consult an attorney, (4) whether the defendant was allowed to consult with relatives or an attorney, (5) whether the defendant was interrogated before or after formal charges had been filed, (6) methods used in questioning, (7) length of questioning, (8) whether the defendant refused to voluntarily give statements on prior occasions, and (9) whether the defendant withdrew or denied making the statement at a later date.[14]

While the trial court did not give this charge, it did charge the jury as to constitutional rights of defendants regarding statements, the burden of proof as to waiver of rights, conditions precedent to consideration of a statement, and corroboration of a defendant's statement.[15] Pretermitting whether it was erroneous for the trial court to fail to give this charge, we discern no reversible error because (1) the

[14] Ga. Pattern Jury Instructions § 1.32.22

[15] Ga Pattern Jury Instructions §§ 1.32.21, 1.32.40, 1.32.50, 1.32.70.

7

majority of the charge was covered by the other voluntariness charges[16]; (2) Jackson was not of so tender an age to make his situation substantially different than that of an 18 year old in a custodial interrogation[17]; and (3) there was overwhelming evidence that his statement was voluntary as concluded in Division (1) (a).[18]

2. In five enumerations of error, Jackson essentially argues that the evidence was insufficient to support the verdict, and thus, the trial court erred by denying his motion for a directed verdict and for a new trial.

Jackson contends that the State failed to submit scientific evidence to support the verdict, there was no credible, consistent, direct evidence other than S. T.'s testimony, and S. T.'s testimony was not credible because of the lapse of a few hours prior to telling someone. Nevertheless, S. T.'s testimony standing alone was sufficient

---

[16] See, e.g., *Tran v. State*, 246 Ga. App. 153, 160 (7) (539 SE2d 862) (2000) (a trial court does not err in failing to give a requested charge "when its charge as a whole contains the same principles of law set forth in the request").

[17] See *J. D. B.*, 131 SCt at 2406 (II) (B) ("a child's age will [not] be a determinative, or even a significant, factor in every case").

[18] See *Robinson v. State*, 272 Ga. 752, 754 (2) (533 SE2d 718) (2000) (no reversible error based on trial court's failure to give requested voluntariness charge); *Chase v. State*, 277 Ga. 636, 639-640 (2) (592 SE2d 656) (2004) (explaining circumstances in which failure to give a jury instruction is harmful as a matter of law).

to support the verdict, and issues of consistency and credibility were for the jury to decide.[19]

3. Finally, Jackson argues that the trial court erred by overruling his objection and allowing the investigating officer to be present in the courtroom prior to Jackson's testimony.

> The practice of separating witnesses or, as generally called, putting under the rule, is of ancient origin and salutary in the proper administration of justice, the object being, of course, to prevent one witness from being taught by another as to the testimony he should give. The mandate of the law is that in all cases either party shall have the right to have the witnesses of the other party examined out of the hearing of each other, and[] hence, the rule is applicable and mandatory

---

[19] See *Ruffin v. State*, __ Ga. App. __ (1) (Case No. A15A1109, decided Sept. 9, 2015) ("the victim's testimony, standing alone, would have been sufficient to authorize a verdict of guilty"); *Warren v. State*, 265 Ga. App. 109, 110 (592 SE2d 879) (2004) ("[T]he General Assembly long ago removed the corroboration requirement from the rape statute. Therefore [the defendant's] corroboration argument has no support in the law and will not be considered by this [C]ourt.") (punctuation omitted); *Greulich v. State*, 263 Ga. App. 552, 554 (2) (588 SE2d 450) (2003) ("The jury obviously believed the victim's testimony as to the two counts on which [the defendant] was found guilty. Determining the credibility of witnesses is entirely within the province of the jury.") (punctuation omitted); OCGA § 16-6-1 (a) (1) ("A person commits the offense of rape when [the defendant penetrates the female sex organ with his sex organ] forcibly and against [the victim's] will."); OCGA § 16-5-41 (a) ("A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority.").

in an interlocutory hearing. Exceptions to the rule exist. The trial court may allow an investigative officer to remain in the courtroom to assist the prosecutor in the orderly presentation of evidence. Thus, while application of the rule is mandatory, the trial court has the discretion to grant an exception if it appears that in making the exception to the rule, the fair rights of the opposite party are secured or the impairment of the efficiency of the court avoided by allowing a deputy or other officials, who are witnesses, to remain in the courtroom. The trial court's exercise of its discretion to allow an exception to the rule will not be reversed on appeal unless it was abused.[20]

Jackson specifically contends that the trial court failed to exercise its discretion in allowing Agent Murray to remain in the court room because the State did not present argument as to why it was necessary.[21] In response to Jackson's invocation of the rule, the State responded, "[w]e would just request that you allow our prosecutor to sit at the table." No other explanation, however cursory, was provided by the State for needing Agent Murray in the courtroom prior to his time to testify.[22] Thus, it was error for the trial court to allow Agent Murray to remain in the

---

[20] (Citations, punctuation, and footnote omitted.) *Smith v. State*, 324 Ga. App. 100, 102-103 (1) (749 SE2d 395) (2013).

[21] See, e.g., *Warner v. State*, 281 Ga. 763, 765 (2) (642 SE2d 821) (2007).

[22] See *Carter v. State*, 271 Ga. App. 588, 590-591 (2) (610 SE2d 181) (2005).

courtroom.[23] Nevertheless, because the evidence against Jackson was overwhelming, including Jackson's own statements and the testimony of the victim and T. B., reversal is not required.[24]

*Judgment affirmed. Phipps, P. J., and Boggs, J., concur*.

---

[23] See id.

[24] See *Glass v. State*, 289 Ga. 542, 548 (6) (c) (712 SE2d 851) (2011).