**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 12, 2019**

# In the Court of Appeals of Georgia

A19A0757. HOLZHEUSER v. THE STATE.                    DO-025 C

DOYLE, Presiding Judge.

Following a jury trial, Robert Holzheuser was convicted of child molestation[1] and public indecency.[2] Holzheuser now appeals from the denial of his motion for new trial, contending that (1) he received ineffective assistance of counsel with respect to (a) the admission of certain evidence based on the contents of his phone, (b) the admission of his recorded confession to police, and (c) the failure to request a downward deviation from mandatory sentencing under OCGA § 17-10-6.2; and (2)

---

[1] OCGA § 16-6-4 (a) (1).

[2] OCGA § 16-6-8 (a) (2). The indecency count merged into the molestation count.

the trial court erred by admitting certain similar transaction evidence pursuant to OCGA § 24-4-414. For the reasons that follow, we affirm.

Construed in favor of the verdict,[3] the evidence shows that a family was shopping at a home improvement store when the 9-year-old daughter became upset and asked her mother to leave the store immediately. They left, and the daughter soon disclosed to her father that a male stranger had lifted up his sweatshirt and exposed his penis to her while they were in the store. The family returned to the store, which eventually was able to produce a surveillance video of the incident after the family filed a police report. Based on the video and other store records, the store and police were able to determine that the suspect in the video purchased a gift card using a debit card issued to Holzheuser.

Holzheuser was identified as an active member of the U. S. Navy, so police contacted Special Agent Jason Boswell, an investigator with the Naval Criminal Investigative Service. Boswell contacted Holzheuser's commanding officer and arranged a time to interview Holzheuser that would not interfere with Holzheuser's military duties.

---

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

At the appointed time, Holzheuser reported to the interview, which was conducted by Boswell and police detective Brian Allgood. Boswell read Holzheuser a form titled "Military Suspect's Acknowledgment and Waiver of Rights." Boswell read the form to Holzheuser, who signed the waiver acknowledging: that he was suspected of committing indecent exposure, that he had a right to remain silent and not answer any questions, that any statements could be used against him in a court martial or other trial, that he could have an attorney present, that he could terminate the interview at any time, and that he was free to leave at any time. After Holzheuser signed the waiver, the interview began, and Holzheuser ultimately admitted that he exposed himself to a minor at the home improvement store. He also admitted that he had viewed child pornography, and "I know that there is child pornography on my phone. . . . I'm not going to deny that there have been single[-]digit [age] children on my phone."

Based on the interview and other investigation, Holzheuser was indicted in superior court for committing one count each of child molestation and public indecency. Prior to trial, he moved to exclude certain sexual images of children found in connection with a search of his cell phone, which motion was denied. Following a jury trial, he was found guilty on both counts, and the trial court merged the

3

indecency count into the child molestation count. Holzheuser moved for a new trial, and after an evidentiary hearing, the trial court denied his motion, giving rise to this appeal.

1. Holzheuser first argues that he received constitutionally ineffective assistance of trial counsel on three grounds: (a) the admission of certain notes on his phone and related website images, (b) the admission of his recorded police interview, and (c) his trial counsel's failure to request a downward deviation from the mandatory sentencing provision in OCGA § 17-10-6.2.

Under *Strickland v. Washington*,[4] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[5] "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct

---

[4] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[5] See id. at 687-688, 694 (III) (A)-(B).

4

is viewed at the time of trial and under the circumstances of the case."[6] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[7] In reviewing the trial court's decision, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[8]

With this framework in mind, we turn to Holzheuser's specific arguments on appeal.

(a) *Failure to object to the admission of website images and phone notes*. At trial, the State examined Boswell about the investigation he conducted after the police relayed the family's complaint about Holzheuser. Boswell explained that part of the investigation included reviewing the contents of Holzheuser's smart phone, based on Holzheuser's admission during the police interview that he had viewed child

---

[6] (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[7] See *Strickland*, 466 U. S. at 697 (IV); *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

[8] (Punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

5

pornography on his phone.[9] As part of that search, Boswell obtained a list of the websites that had been viewed on Holzheuser's phone as well as Internet search terms and notes stored in a note-taking application. Included in this information were sexually suggestive uniform resource locators ("URLs"[10]) and searches with term "little girls" in them. Boswell further explained that he entered the search terms and URLs on a dedicated investigative computer and printed out screen shots of the results, including a small number of "representative images" he selected independently. There was also at least one suggestive website URL saved in Holzheuser's note-taking application, and Boswell printed out screen shots of the results when he visited that website as part of the investigation.

According to Boswell, the images and web sites from these searches featured "images [of] consistently young[] girls in their underwear or lingerie." As part of his testimony, Boswell carefully explained that these were images that displayed when he searched the terms and URLs found on Holzheuser's phone; he did not claim that

---

[9] Police did an initial, perfunctory search pursuant to Holzheuser's consent, and they later did a more thorough search pursuant to a warrant.

[10] A URL refers to a particular website address on the Internet. See https://www.merriam-webster.com/dictionary/URL (website last accessed May 5, 2019).

6

the images themselves were found on Holzheuser's phone. Essentially, "I opened up three of the links to get a gist of what is on the website or where it takes you. And that was enough for me." He also testified that there were no images that he believed to be pornographic saved on the phone itself, and on cross-examination, Boswell agreed that he did not know whether Holzheuser actually viewed any of the particular images presented at trial.

(i) *Authentication*. Holzheuser argues that his trial counsel should have objected to the captured images and notes introduced during Boswell's testimony because they were not properly authenticated. Holzheuser cites *United States v. Bansal*,[11] arguing in his brief that the Federal Rules of Evidence "require[] the use of an internet archive to show how that website appeared at the time of access. . . ." While that case did involve testimony of a witness describing an internet archive called the "Wayback Machine," the case did not purport to establish the clear rule that Holzheuser urges here. Instead, *Bansal* merely reiterates one way to satisfy Federal Rule of Evidence 901, which states that "[t]o satisfy the requirement of authenticating

---

[11] 663 F3d 634, 667 (VII) (D) (2) (3d Cir. 2011).

or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[12]

The applicable rule in Georgia is OCGA § 24-9-901 (a): "The requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This can be shown by "[t]estimony of a witness with knowledge that a matter is what it is claimed to be,"[13] or by a document's "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."[14] Thus, there is no bright line rule specifically requiring the use of an Internet archive, and based on Boswell's testimony — that the screen shots accurately depicted the images Boswell viewed and printed out, not that they had been viewed by Holzheuser at a particular time — Holzheuser's argument fails as to an authenticity objection regarding those

---

[12] Id.

[13] OCGA § 24-9-901 (b) (1).

[14] OCGA § 24-9-901 (b) (4).

documents.[15] To the extent that Holzheuser argues that the information on his phone could have been the product of a different person's use of his phone without his knowledge or permission, this argument goes to weight, not authenticity.[16] There was no dispute that the notes were found on Holzheuser's personal cell phone, Boswell personally authenticated them as such, and Holzheuser admitted to using his phone to view child pornography.[17] The admission of evidence is reviewed only for an abuse of the trial court's discretion,[18] and based on the record before us, Holzheuser's

---

[15] See *Cotton v. State*, 297 Ga. 257, 259 (3) (773 SE2d 242) (2015) ("[D]ocuments from electronic sources such as the printouts from a website . . . are subject to the same rules of authentication as other more traditional documentary evidence and may be authenticated through circumstantial evidence.").

[16] See, e.g., *Cowins v. State*, 290 Ga. App. 814, 817 (660 SE2d 865) (2008) ("When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight.") (punctuation omitted).

[17] See, e.g., *Glispie v. State*, 335 Ga. App. 177, 184-185 (1) (b) (i) (779 SE2d 767) (2015) (physical precedent only), reversed in part on other grounds by *Glispie v. State*, 300 Ga. 128 (793 SE2d 381) (2016).

[18] See, e.g., *Spencer v. State*, 287 Ga. 434, 436 (2) (a) (696 SE2d 617) (2010) (noting that we review a trial court's decision on the admission or exclusion of evidence for an abuse of discretion).

argument does not demonstrate deficient performance on the part of his trial counsel.[19]

(ii) *Relevance*. Holzheuser similarly argues that his trial counsel should have objected on the ground that the website images were not relevant to the issues at trial because there was no evidence that Holzheuser viewed them. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[20]

The images the State introduced through Boswell were admitted, in part, to show Holzheuser's sexual intent in exposing himself to a young girl. Demonstrating a prurient interest in underage girls would support a finding that Holzheuser intended to expose himself for the purpose of sexual gratification, which is an element of child molestation.[21] Holzheuser denied any sexual intent during his police interview, so

---

[19] See *Faust v. State*, 302 Ga. 211, 218 (4) (a) (805 SE2d 826) (2017) (holding that "counsel was not ineffective for failing to make a meritless objection").

[20] OCGA § 24-4-401.

[21] See OCGA § 16-6-4 (a) ("A person commits the offense of child molestation when such person: (1) Does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person. . . .").

10

evidence tending to prove that fact would be relevant. Accordingly, a relevance objection would have been meritless and cannot support Holzheuser's ineffective assistance claim.[22]

(iii) *Rule 403*. Holzheuser next argues that his trial counsel should have objected on the ground that the images were inadmissable under OCGA § 24-4-403: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Holzheuser points to the fact that there was no evidence that he actually viewed the specific images at issue, and he urges that this deprived the evidence of probative value. Holzheuser misapprehends the purpose of the evidence. The State did not argue that the images were on Holzheuser's phone or that Holzheuser viewed the particular images proffered through Boswell's testimony. Instead, the State argued that the evidence was representative of the type of images available on the websites Holzheuser admitted to visiting as well as on URLs stored on Holzheuser's phone. Police found no sexually explicit images actually stored on Holzheuser's phone, so

_____

[22] See *Faust*, 302 Ga. at 218 (4) (a).

11

the evidence was useful to show the type of content displayed when someone visited the URLs and used the search terms saved on Holzheuser's phone. Futher, the images were probative of the fact that Holzheuser sought sexual gratification by viewing sexually suggestive images of underage girls. As noted above, this would be relevant to his intent in committing the acts alleged in the indictment.

The harm that Rule 403 seeks to minimize is not mere prejudice, but "unfair prejudice,"[23] such as by introducing inflammatory material that has no bearing on the issues at trial. But here, Holzheuser admitted to police that he had viewed child erotica on his phone, and the images were the result of visits to the URLs on Holzheuser's phone and in his note-taking app. Thus, the material offered by Boswell was part of the subject matter of the police interview, and it was helpful in demonstrating the type of content in Holzheuser's phone and web activity.[24] Boswell was careful to explain what the images were as well as what they were not, and the

---

[23] See, e.g., *United States v. Meester*, 762 F2d 867, 875 (II) (A) (11th Cir. 1985) ("Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter[.]") (citation and punctuation omitted; emphasis in original) (applying Fed. R. Evid. 403).

[24] See generally *Stinski v. State*, 281 Ga. 783, 786 (3) (642 SE2d 1) (2007) ("[P]hotographs are inherently more persuasive regarding the existence of the things they depict than testimony regarding those same things.").

State did not attempt to confuse the jury as to what the images represented. Under these circumstances, the challenged evidence did not present a risk of undue prejudice that substantially outweighed its probative value. Accordingly, trial counsel's failure to make an objection on Rule 403 grounds does not meet Holzheuser's burden under *Strickland*.

(b) (i) *Failure to object to admission of police interview based on a fear of losing employment.* Prior to trial, Holzheuser's trial counsel moved to exclude the police interview, and the trial court held a *Jackson-Denno*[25] hearing at which Boswell testified. The trial court denied Holzheuser's motion to exclude the interview, finding it voluntary. On appeal, Holzheuser contends that his trial counsel should have objected to admission of the interview on the ground that Holzheuser consented to the interview only because he reasonably feared he would lose his duty-required security clearance if he did not speak to police.

As support, Holzheuser cites *Garrity v. New Jersey*,[26] which addressed police officers accused of fixing traffic tickets. As part of an investigation ordered by the Supreme Court of New Jersey, the state attorney general interviewed the officers,

---

[25] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

[26] 385 U. S. 493 (87 SCt 616, 17 LE2d 562) (1966).

13

warning them that they had a right to refuse to answer the questions, but if they refused, they would be subject to removal from their jobs pursuant to a state statute.[27] The United States Supreme Court ruled that the interviews were not voluntary because "the choice imposed on [the officers] was one between self-incrimination or job forfeiture."[28]

Here, Boswell explained the interview scenario in this case. At the outset, Boswell explained to Holzheuser that he was not in custody: "The door is not locked. You're free to leave at any time." Holzheuser replied that he "definitely underst[oo]d." Boswell then read Holzheuser an acknowledgement and waiver of rights stating:

> I have the right to remain silent and make no statement at all[.] Any statement I make can be used against me in a trial by court-marshall or other judicial or administrative proceeding[.] I have the right to consult with a lawyer prior to any questioning. This lawyer may be a civilian lawyer retained by me at no cost to the United States, a military lawyer appointed to act as my counsel at no cost to me, or both[.] I have the right to have my retained lawyer and/or appointed military lawyer present during this interview[.] . . I may terminate this interview at any

---

[27] See id. at 495.

[28] Id. at 496.

14

time, for any reason. . . With that understanding, I have decided that I do not desire to remain silent, consult with a . . . lawyer, or have a lawyer present at this time. I make this decision freely and voluntarily. No threats or promises have been made to me.

Boswell explained to Holzheuser that these rights "are not going away. . . . [I]f you would like to speak with us or you have anything that you want to say, we're open to hear it. But if you decide that you don't, you can always exercise [the right not to speak]. You can turn it off for any reason at any time." Holzheuser agreed to sign the waiver.

With respect to the circumstances surrounding the interview, at trial Boswell explained that Holzheuser was not in custody at the time of the interview, but military protocol requires that suspects be read the acknowledgment of rights due to the influence of command:

[Military suspects] are under authority of a commanding officer. He had to come to our office that morning. We talked to his commanding officer. [Holzheuser] was sent there. Once he gets to the building, that's done. He doesn't have to speak to us, but we have to explain that, you were told to come here. You are not in custody. You are not under arrest. The door is not locked. You are free to leave at any time. We would like to speak to you. I'm going to go over your . . . rights. Once you've

acknowledged those, we'll have a conversation if you want to. . .[W]hile they told you to come here, again, your part is over.

As explained by Boswell, Holzheuser was under an obligation to report to the interview by virtue of the military command authority, but he was not under obligation to speak or substantively engage in the interview, and he could invoke his right to remain silent or leave at any time. Holzheuser cites no regulation or other law requiring him to submit to the interview process and answer the investigators' questions. This materially distinguishes the facts of this case from those in *Garrity*, where the officers were under a statutory obligation to follow through with the substance of the interview or be subject to discipline for not doing so.[29] That Holzheuser might be subject to discipline for the content of his interview did not render the interview involuntary; if anything, it would militate against participating in the interview, which Holzheuser elected to do with knowledge of his right to remain silent. Further, Boswell's urging Holzheuser to tell the truth in the interview to help himself in the eyes of his commanding officers or eligibility for duty status

[29] See id.

16

was not improper.[30] Under these circumstances, an objection pursuant to *Garrity* would not require exclusion of the interview, and this argument demonstrates no basis for reversal.

(ii) *Failure to object to the police interview on the ground that Holzheuser was required to waive his Miranda rights to make a voluntary statement.* Next, Holzheuser argues that his trial counsel should have argued that he was misled into waiving his rights because, as stated in his appellate brief, Holzheuser "would need to waive his rights to speak to Agent Boswell as he [had] been ordered to do when his 'Skipper called him in.'" Holzheuser points to Boswell's statement that "before we can really get into what has gone on . . . we need you to acknowledge your rights before [we] get into that. They're not going away." Based on this, Holzheuser argues that he was obligated to waive his rights in order to speak to investigators, which contravenes the holding in *State v. Darby*: "[A] suspect can always make a spontaneous, voluntary statement which would be admissible at trial. . . [More fully,

---

[30] See *Price v. State*, __ Ga. __ (2) (825 SE2d 178) (2019) ("[I]t is permissible for the police to tell a suspect that the trial judge may [favorably] consider his truthful cooperation with the police.") (punctuation omitted); *Morales v. State*, 337 Ga. App. 614, 617 (2) (b) (788 SE2d 535) (2016) (holding that exhortations to tell the truth are not improperly coercive).

a suspect can] make a voluntary statement, but . . . he [can] not be interrogated by the officers, without signing the waiver."[31]

In light of the facts before us, Holzheuser's argument does not require reversal. In *Darby*, the defendant made a spontaneous statement after invoking his right to counsel, and the officers responded that "If you want to tell us your side of the story you can — you know, you can sign off on a waiver and tell us your side of the story."[32]

> Here, unlike in *Darby*, [Holzheuser] did not make a spontaneous statement or indicate that he wanted to do so. Instead, the agent explained that he was presenting him with his rights before proceeding with an "interview" about what had occurred. . . . After confirming that [Holzheuser] understood his rights, the agent began questioning him.[33]

Thus, this scenario presents no basis for reversal, had Holzheuser's trial counsel objected pursuant to the rule in *Darby*.[34]

---

[31] (Citation omitted.) *State v. Darby*, 284 Ga. 271, 272 (1) (663 SE2d 160) (2008).

[32] (Punctuation omitted.) Id. at 271.

[33] *Francis v. State*, 296 Ga. 190, 195-196 (3) (A) (766 SE2d 52) (2014).

[34] See id.

(c) *Failure to request a downward deviation from the mandatory minium sentence*. In his last ineffective assistance claim, Holzheuser contends that his trial counsel should have requested a downward deviation in his sentence pursuant to OCGA § 17-10-6.2 (c) (1) (C). That Code section provides:

> In the court's discretion, the court may deviate from the mandatory minimum sentence[35] [applicable to certain sexual offenses], or any portion thereof, when the prosecuting attorney and the defendant have agreed to a sentence that is below such mandatory minimum or provided that . . . [t]he court has not found evidence of a relevant similar transaction. . . .

Holzheuser has provided no evidence that the State would have agreed to a downward deviation, nor has he demonstrated that the trial court felt constrained not to exercise its discretion in his favor by his failure to request a lower sentence. Nevertheless, even assuming the trial court would exercise its discretion in Holzheuser's favor, the trial court would be authorized to do so only if it did not find

---

[35] Under OCGA § 17-10-6.2 (b), persons convicted of certain sexual offenses "shall be sentenced to a split sentence which shall include the minimum term of imprisonment specified in the Code section applicable to such sexual offense. No portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the court."

evidence of a relevant similar transaction.[36] The trial court did find such evidence, and in light of our holding below in Division 2 affirming that ruling, the trial court was not authorized to deviate from the statutory sentencing requirement in OCGA § 17-10-6.2. Accordingly, Holzheuser's request would have been meritless, and this argument fails.[37]

2. Holzheuser's last argument is that the trial court erred by admitting evidence under OCGA § 24-4-414. This rule provides that "[i]n a criminal proceeding in which the [defendant] is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant."[38] An "offense of child molestation" includes transmitting to a child under 16 years old, by means of an electronic device, images of a person engaging in an indecent act "with the intent to arouse or satisfy the sexual desires of either the child or the person."[39] OCGA § 24-4-414 is "a rule of inclusion, with a strong presumption in favor of

---

[36] See OCGA § 17-10-6.2 (c) (1) (C).

[37] See *Faust*, 302 Ga. at 218 (4) (a).

[38] OCGA § 24-4-414 (a).

[39] OCGA §§ 24-4-414 (d) (1); 16-6-4 (a) (2).

admissibility, and the State can seek to admit evidence under these provisions for any relevant purpose, including propensity. And a trial court's decision to admit other acts evidence will be overturned only when there is a clear abuse of discretion."[40]

Here, after the State provided notice of its intent to admit evidence that Holzheuser committed a prior act of child molestation, the court held a hearing, reviewed the police report from the prior incident, and admitted the evidence. The record shows that in 2013, an 11-year-old girl was staying at a local motel with her family. On several occasions over the course of a week, when the girl walked to her school bus in the morning, the girl observed notes in the window of a nearby hotel room occupied by Holzheuser. One note said, "tap on the window to see my D-I-C-K," and another note said "I want to lick your P-U-S-S-Y." Another time, the girl saw a phone resting against the window and displaying a photo of a nude woman receiving oral sex. The girl told her mother, and when they immediately came to look for the sign, it was gone. The mother deduced by the timing of the notes that they were directed at her daughter.

---

[40] (Footnotes and punctuation omitted.) *King v. State*, 346 Ga. App. 362, 364 (1) (816 SE2d 390) (2018).

This record supports a finding that Holzheuser displayed indecent notes, including an indecent image on his phone depicting oral sex, to the 11-year-old child for sexual gratification. Accordingly, this would demonstrate a prior act of child molestation,[41] making the evidence admissible for the purpose of showing Holzheuser's lustful interest in minor girls of approximately the same age as the victim in this case.[42]

> The exception to the general rule that evidence of other crimes is not admissible has been most liberally extended in the area of sexual offenses[, particularly against minors]: In [such cases], evidence of similar previous transactions is admissible to show the lustful disposition of the defendant [toward underage children]. There need only be evidence that the defendant was the perpetrator of both crimes and sufficient similarity or connection between the independent crime and the offenses charged. [43]

---

[41] See OCGA § 16-6-4 (a) (2).

[42] See OCGA § 24-4-414 (d) (1).

[43] (Punctuation omitted.) *Peterson v. State*, 337 Ga. App. 70, 74 (785 SE2d 905) (2016) (decided under prior Evidence Code).

22

In light of the targeting of similarly-aged, female child victims, as well as the semi-public nature of indecency in each case, the trial court did not abuse its discretion in admitting the prior act evidence under OCGA § 24-4-414.

*Judgment affirmed. Coomer and Markle, JJ., concur.*