A11A2328. KERDPOKA v. THE STATE.
(724 SE2d 419)

ADAMS, Judge.
Yotthachai Kerdpoka was convicted of child molestation, and he appeals. He does not challenge the sufficiency of the evidence. Rather, he challenges rulings of the trial court regarding voir dire,

the admission of character evidence, the scope of cross-examination, and prejudicial remarks by a juror; he also contends he received ineffective assistance of counsel.

Construed in favor of the verdict, the evidence shows that Phil and Phoebe Hughes employed a Thai housekeeper named Nitaya Meebamroong for 14 years. Meebamroong's son — the appellant — came to the United States in 1999 followed by his then seven-year-old daughter in 2001. Kerdpoka worked for Mr. Hughes at his car dealership in Athens, and the child became close with the Hughes family. In February 2006, the child, who was then age 12, told Mrs. Hughes that she had pain in her private parts, which eventually led Mrs. Hughes to take her to Dr. Rachel Murthy, a gynecologist. While at Dr. Murthy's office, the child told Mrs. Hughes that her father had "been doing bad things to [her]," including having sex with her. Although the child gave inconsistent information to the doctor, at one point she told Dr. Murthy that she had been touched inappropriately in the genital region, including finger and penile penetration. The child was also found to have Herpes antibodies, a sign of infection. At trial, the child testified that her father had touched her inappropriately for years; that he had sexual intercourse with her in the past; that in February 2006, he touched her private part and had sex with her; and that he later came to her school and told her not to tell anyone. A witness who discussed the matter with Kerdpoka when the incident came to light testified that Kerdpoka said, "I stupid"; and Mr. Hughes testified that Kerdpoka said, "I did it." Thus, although not challenged, we find this evidence was sufficient to support the conviction of child molestation.

1. Kerdpoka contends the trial court erred by denying his request for sequestered voir dire. Prior to jury selection, Kerdpoka's counsel moved that the voir dire be sequestered, that is, that he be allowed to question the jurors individually, out of the presence of the other jurors. The Code provides that in criminal cases, the prosecution and the defense "shall have the right to an individual examination of each prospective juror from which the jury is to be selected prior to interposing a challenge." OCGA § 15-12-133. But that Code section grants only "the right to an individual response, not to an individual question," and "it does not mandate sequestered voir dire." *Hodo v. State*, 272 Ga. 272, 273 (2) (a) (528 SE2d 250) (2000). Defendants who desire sequestered individual examination of members of the jury panel must make a request, which is subject to the discretion of the trial court. Id. And "a showing of prejudice from denial is necessary to show an abuse of discretion. [Cits.]" Id.

In this case, the court decided to review the jury panel's responses to a confidential questionnaire in order to determine whether Kerdpoka's desired procedure was necessary. Kerdpoka was

then allowed to ask each juror follow-up questions based on the questionnaire, and if any juror expressed a desire for privacy, he or she could approach the bench for private questioning by both sides. Thus, the court put in place a procedure to allow some questioning in a confidential manner, and Kerdpoka has not shown how this procedure was a breach of discretion. Moreover, Kerdpoka has not shown how he was prejudiced by this procedure, nor cited even a single instance where this procedure somehow affected the questioned juror or any other jurors. Accordingly, we find no reversible error.

2. Kerdpoka contends the trial court erred by denying his motion for mistrial in connection with evidence that he had been convicted of driving under the influence of alcohol. Kerdpoka's job supervisor testified, and while on cross-examination regarding Kerdpoka's job duties, he testified that Kerdpoka's duties changed after "he got a DUI for driving and we could no longer let him drive." The quoted part was not responsive to the question. Kerdpoka moved for a mistrial; the court declined the motion but instructed the jury to disregard the testimony; and the court asked whether there was any juror who could not do so, to which no person responded in the affirmative.

"When prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial. [Cit.] Whether the statements are so prejudicial as to warrant a mistrial is within the trial court's discretion. [Cit.]" *White v. State*, 268 Ga. 28, 32 (4) (486 SE2d 338) (1997). And we review denial of a mistrial in this situation "for abuse of discretion by examining factors and circumstances, including 'the nature of the statement, the other evidence in the case, and the action taken by the court and counsel concerning the impropriety.' [Cit.]" Id.

We find this case to be consistent with *Browning v. State*, 236 Ga. App. 893 (513 SE2d 779) (1999). In that case, a witness inappropriately testified that the defendant had been arrested for DUI, thereby placing his character in evidence. Id. at 894 (2). Following a motion for mistrial, the court gave a curative instruction. Id. Because the testimony appeared to be inadvertent, and given the prompt curative instruction, the court found no abuse of discretion. Id. Here, Kerdpoka's DUI was not related to the charges against him, the statement appeared to be inadvertent, and the court gave a prompt curative instruction. For these reasons, we find no abuse of discretion. See also *Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997) (inadvertent mention of probation). Cases such as *Lancaster v. State*, 189 Ga. App. 149 (375 SE2d 281) (1988), are distinguishable because the inadvertent testimony that the defen-

dant had a prior DUI was relevant to the pending charges of DUI and driving on a suspended license.

3. Kerdpoka contends the court erred by finding that, in a separate incident, defense counsel opened the door to bad character evidence regarding him drinking and driving. The State presented Dr. Paul Cardozo, a licensed psychologist, who provided psychological counseling to the child-victim. One of Kerdpoka's trial attorneys was cross-examining Dr. Cardozo about statements he made in a report about the victim. Counsel asked, "Did [the child] admit to you that she still tells adults what she believes they want to hear?" Dr. Cardozo then consulted his notes to make sure he saw the statement to which defense counsel was referring. Dr. Cardozo then testified:

> Okay. I've got to explain the context of that because that statement is meaningless otherwise. She had talked to me about how her father would drink and drive.

Defense counsel objected on the basis that the answer was not responsive to the question. The court allowed the witness to finish his answer. Dr. Cardozo then testified that, according to the child, at times when Kerdpoka was drinking and driving with the child in the car, and he expressed anger, the child would try to placate him so that he did not blow up at her. Dr. Cardozo explained that was the reason he wrote that "she has tried to please adults . . . so that they don't get mad at her" and that "she does tell adults what . . . she thinks they want to hear."

On appeal, Kerdpoka contends that the trial court erred by allowing this additional evidence of bad character. But trial counsel did not object on that basis at trial, and therefore that argument is waived on appeal. *Chesser v. State*, 228 Ga. App. 164, 165 (1) (a) (491 SE2d 213) (1997). Kerdpoka's claim that his counsel was ineffective in this regard will be addressed below.

4. Kerdpoka contends the trial court erred by limiting cross-examination of Phoebe Hughes and the child-victim. As stated by the Supreme Court, the trial court, in its discretion, may limit cross-examination to reasonable bounds:

> While the right to a cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him (OCGA § 24-9-64), yet the scope of the cross-examination rests largely within the discretion of the trial judge, to control this right within reasonable bounds, and his discretion will not be controlled by a reviewing court unless it is abused.

*Payne v. State*, 258 Ga. 711, 712 (2) (373 SE2d 626) (1988).

(a) While Phoebe Hughes, one of the State's key witnesses, was on cross-examination, Kerdpoka's counsel believed that she testified inconsistently with her testimony on direct, and he requested that the court reporter replay her earlier testimony in order to impeach her credibility. The court denied the request and decided that the jury could recall the earlier testimony. On appeal, Kerdpoka has not shown the alleged inconsistency with earlier testimony and therefore can show no possible harm from the trial court's decision. See *Inman v. State*, 281 Ga. 67, 73 (5) (635 SE2d 125) (2006) ("In order to have reversible error, there must be harm as well as error. [Cit.]").

(b) Kerdpoka contends the trial court improperly curtailed his cross-examination of the victim in several ways: (1) by requiring defense counsel to stand at a podium while cross-examining her; (2) by asking the victim if she needed to take a break or needed water; (3) by asking defense counsel how much longer the cross-examination would take and commenting that the victim would "need some relief"; (4) by calling for a break in the child's testimony because of concern with the witness being exhausted, and allowing the State to question other witnesses before resuming the child's cross-examination.

First, Kerdpoka has not shown how any of the court's actions was an abuse of discretion by the trial judge, who was clearly attempting to ensure that the 12-year-old child was treated fairly. "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent, the defense might wish." (Citations and punctuation omitted.) *Kolokouris v. State*, 271 Ga. 597, 600 (4) (523 SE2d 311) (1999). And second, other than a simple assertion that these things "harmed the Defendant in this case as the credibility of this witness was the key issue in the case," Kerdpoka has failed to show how any of the court's actions affected the cross-examination or his ability to impeach the witness, and he has not shown that the substance of his questions was limited. Again, no possible harm has been shown, and therefore no reversible error proved.

5. Kerdpoka contends the court erred by failing to grant his motion for mistrial regarding a juror's remarks made in the presence of other jurors.

At the beginning of one day of trial, defense counsel moved for mistrial based on the fact that Juror Dry made a vomiting gesture to him after leaving the courtroom the previous day and that he had cursed defense counsel as well. In response, the court questioned Juror Dry about the incident separate from the other jurors; the court then questioned each remaining juror individually to determine any possible effect. Juror Dry admitted that he "did something

[he] shouldn't have in the elevator yesterday." He admitted that in the presence of another juror, defense counsel, and assistant counsel he "let loose with both barrels" about his frustration with how the cross-examination of the child was "long-winded" and repetitive, and about how he was tired of it and how it was "driving [him] insane." But he steadfastly denied that he had discussed the content of the case with the other jurors, although he did not believe that he could continue to listen to the evidence and make a decision based on that evidence.

The court's thorough, individual examination of the other jurors about Juror Dry revealed that some had heard other jurors comment about the pace of the trial. The questioning also revealed that another juror — Johnson — had already formed an opinion about the case and had expressed it to some of the other jurors. But further inquiry of all the remaining jurors showed that no other juror had been influenced by any other juror about the substance of the case.

The trial court then excused Jurors Dry and Johnson and seated two alternates. The court explained that it was satisfied that none of the remaining jurors had been influenced by statements that either Dry or Johnson may have made and that it did not feel that the process had been impaired such that a mistrial was required. The court also gave the jury cautionary instructions about discussing the merits of the case prior to the close of the evidence, as well as other instructions.

On appeal, Kerdpoka only argues that Juror Dry's statements were sufficient to result in a mistrial. The State has the burden of showing no harm in this situation, but a new trial is not required unless the events or statements are so inherently prejudicial as to amount to a lack of due process:

> There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred. However, a jury verdict will not be upset solely because of such conduct, unless the statements are so prejudicial that the verdict must be deemed inherently lacking in due process. Our inquiry then must be directed to whether this error is so inherently prejudicial as to require a new trial, or whether it is an immaterial irregularity without opportunity for injury. Where the substance of the communication is established without contradiction, the facts themselves may establish the lack of prejudice or harm to the defendant.

(Citations and punctuation omitted.) *Sims v. State*, 266 Ga. 417, 419

(3) (467 SE2d 574) (1996). Here, the jurors' responses supported the trial court's findings completely: that no remaining juror had been influenced regarding the substance of the case by Juror Dry's comments. Furthermore, we agree with the trial court that comments about the pace or tediousness of the proceedings is not so inherently prejudicial as to result in a lack of due process.[1] Therefore we conclude that the trial court did not err by denying the motion for new trial.

6. Finally, Kerdpoka contends he received ineffective assistance of counsel in three ways: (a) lead counsel failed to adapt his cross-examination of the victim to court rulings thereby causing the court to adjourn cross-examination and causing Juror Dry to react the way he did; (b) his assistant counsel opened the door to the evidence regarding Kerdpoka's drinking and driving; and (c) defense counsel failed to file an order for medical testing ex parte and under seal, which allowed the State improper access to the information.

To show ineffective assistance, a criminal defendant must show both that his counsel's performance was deficient, and but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

(a) Kerdpoka contends that lead counsel was ineffective because he "allowed a child witness to remain on the stand for hours over the course of two days, and despite his testimony at the motion for new trial, he did not adjust his cross-examination to prevent this." In fact, the court was concerned about the effect of counsel's tactics on the defendant's case:

> I want you to make sure your client is in agreement because I think there is potential for the jury to be very — to take this level of inquiry in a negative way toward your client so I want to make sure that you — that it's consistent with his wishes to have that inquiry made.

And, as shown above, Juror Dry reacted strongly because he felt the child's cross-examination was so "long-winded" and repetitive that it was "driving [him] insane."

---

[1] [T]he law is well-established that the type of "irregularity" that gives rise to such a presumption of prejudice involves juror misconduct that has the potential to injure a defendant's due process rights, e.g., making an unauthorized visit to the crime scene and then presenting the findings to the jury panel, *Butler v. State*, 270 Ga. 441 (2) (511 SE2d 180) (1999); privately discussing the defendant's guilt prior to deliberations in violation of the court's instructions, see *Sims v. State*, 266 Ga. [at 419 (3)]; or improperly accessing outside news sources. See *Oliver v. State*, 265 Ga. 653 (3) (461 SE2d 222) (1995).
*Jones v. State*, 282 Ga. 47, 50 (3) (644 SE2d 853) (2007).

First, "[t]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." *Simpson v. State*, 277 Ga. 356, 359 (4) (b) (589 SE2d 90) (2003). Regardless, Kerdpoka has not shown harm as a result of counsel's tactics. In fact, Kerdpoka was acquitted on charges of incest, aggravated sodomy, rape, and two counts of aggravated child molestation, strongly suggesting he received effective assistance of counsel.[2] And although Juror Dry had to be dismissed, the court's individual inquiry of the remaining jurors showed that none were influenced by Juror Dry's comments with regard to the merits of the case. We conclude there is no basis for reversal based on this contention.

(b) In the same incident referred to in Division 3, Kerdpoka contends that he received ineffective assistance of counsel when his assistant counsel opened the door to bad character evidence while cross-examining the victim's psychologist regarding Kerdpoka drinking and driving in the presence of the child. As shown above, Kerdpoka's assistant counsel did not object to the improper character evidence, move to strike the testimony, or move for a mistrial, thereby waiving those arguments on appeal.

First, Kerdpoka's assistant counsel did not testify at the hearing on the motion for new trial, which makes it extremely difficult to overcome the presumption that assistant counsel's conduct was strategic or that it falls within the wide range of reasonable professional conduct. *Davis v. State*, 280 Ga. 442, 443 (2) (629 SE2d 238) (2006); *McRae v. State*, 289 Ga. App. 418, 419 (657 SE2d 323) (2008). Second, the evidence that Kerdpoka had a DUI was already in the record when assistant counsel was cross-examining the psychologist. And given that the assistant counsel knew the full context of the psychologist's statement, including that the psychologist's report stated that the child had said that Kerdpoka had driven after drinking, the assistant counsel may have been willing to risk eliciting somewhat duplicative unfavorable testimony in order to get the psychologist to testify to the strongly favorable information that the child "tell[s] adults what . . . she thinks they want to hear." Third, a mistrial would not have been appropriate, anyway, where counsel actually elicits the unfavorable testimony. See *Patterson v. State*, 285 Ga. 597, 600 (4) (679 SE2d 716) (2009). And, finally, as shown above, the jury appears to have carefully sifted and weighed the facts, as it

---

[2] [Acquittal on several felony counts] strongly supports the conclusion that the assistance actually rendered by defendant's trial counsel fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render. (Citations omitted.) *Green v. State*, 218 Ga. App. 648, 651 (3) (a) (463 SE2d 133) (1995).

acquitted Kerdpoka on all the more serious charges. Thus, Kerdpoka has not shown that he was harmed by ineffective assistance of counsel on this ground.

(c) Kerdpoka raises a third ground of ineffective assistance: that his trial counsel failed to take adequate steps to keep confidential the fact that he had taken a blood test to see whether he had herpes. Kerdpoka reasons as follows: His counsel had to obtain a court order to transport Kerdpoka for testing; the order put the State on notice of the testing, and it eventually obtained the related medical records; those medical records gave the State a basis to cross-examine Kerdpoka at trial; the State asked Kerdpoka about taking a blood test; and the question led to an inference that he had herpes, which the victim also has. He therefore argues that trial counsel was ineffective by failing to make an ex parte request that the order to transport be made under seal.

The record shows, however, that the State was not allowed to introduce the medical records. And the record shows that the State did not ask about the blood test; it simply asked Kerdpoka whether he had herpes. Kerdpoka answered, "The lawyer took me to Athens Regional, but I don't know what happened." When the question had to be repeated, Kerdpoka answered, "I never had herpes, but I go check my blood at Regional Hospital, but I do not find the result yet." Thus, it was Kerdpoka, himself, who first revealed to the jury that there had been a trip to the hospital and a blood test. And the State could have asked whether he had herpes based on the simple fact that the victim had herpes and the knowledge that herpes is communicable. Thus, the way the questioning unfolded at his trial, Kerdpoka is the one who revealed that he had taken a blood test for herpes. "Induced error is impermissible. *Edwards v. State*, 235 Ga. 603, 604 (221 SE2d 28) [(1975)]. 'A party cannot claim error . . . where he himself committed or invited the error. . . .' [Cit.]" *Westmoreland v. State*, 192 Ga. App. 173, 176-177 (2) (b) (384 SE2d 249) (1989).

Accordingly, Kerdpoka cannot show that he was harmed by any possible ineffective assistance of counsel in failing to keep the transportation order confidential.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED FEBRUARY 28, 2012 — ▇▇▇▇▇▇▇

*Elizabeth M. Grant*, for appellant.

*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney*, for appellee.