**FIFTH DIVISION**
**MCFADDEN, P.J.,**
**MARKLE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 1, 2022**

# In the Court of Appeals of Georgia

A21A1308. PRIDDY v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury found Reginald Priddy guilty of rape, incest, aggravated child molestation, aggravated sodomy, three counts of child molestation, three counts of sexual battery, and cruelty to children in the first degree, and the trial court sentenced him on the convictions. Priddy filed a motion for a new trial, which he amended several times. The trial court denied Priddy's motion, and Priddy appeals this ruling. He asserts that (1) the evidence was insufficient to support his convictions, (2) the trial court erred in denying his motion in limine regarding the Rape Shield Statute, (3) his trial counsel provided ineffective assistance, (4) the trial court erred in failing to sequester jurors for individual voir dire, and (5) the trial court improperly

sentenced him on his aggravated sodomy conviction. For the reasons that follow, we affirm Priddy's convictions and sentences.

1. Priddy first asserts that the evidence was insufficient to support his convictions. We disagree.

> When a defendant challenges the sufficiency of the evidence to support his criminal convictions, we ask only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld.

*Torres v. State*, 353 Ga. App. 470, 476 (1) (838 SE2d 137) (2020) (citation and punctuation omitted).

So viewed, the evidence shows that Priddy is the victim's father, but he had no contact with her until she was 11 years old. At that point, the victim left her mother in Florida and went to live with Priddy and his family, and they moved to Atlanta when she was in the sixth or seventh grade. According to the victim, after the move to Atlanta, Priddy punched her and knocked her to the ground for not having good grades. Around that same time, Priddy also began sexually abusing the victim; Priddy would crawl into bed with her, telling her that he wanted her to warm him up, and

2

then ask her to rock back and forth when she was on top of him. He also touched her buttocks, rubbed her breast and vaginal area, and rubbed his erect penis on her. This happened once or twice a week for quite a while. Eventually Priddy demanded penetration, despite the victim's resistance. The first time Priddy penetrated the victim, she began bleeding, and he stopped. According to the victim, on one particular day Priddy abused her "all day." First he made the victim put his penis in her mouth, and then he put his penis in her vagina despite her protestations. Priddy put his penis in her vagina two other times that day. A week later, Priddy penetrated her again, then ejaculated in her mouth and made her swallow his semen. All of these acts occurred prior to the victim's thirteenth birthday.

At some point, the victim began cutting her wrists and called her mother, who picked up the victim and took her home to Jacksonville, Florida. Eventually, the victim told her mother about Priddy's actions. The victim's mother took her to a forensic interviewer, and the State introduced an audiovisual recording of the interview into evidence.

The victim's mother also contacted Priddy. She testified that Priddy told her in a telephone call that he had been on drugs when the incidents occurred. The State introduced screen shots of text messages between the victim's mother and Priddy in

3

which Priddy stated that he had a problem, but had turned his life around, did not want to go to jail, and would "be making amends." The victim's grandmother also testified at trial that Priddy admitted to her during a telephone conversation that he had sex with the victim and blamed his actions on drug use.

Priddy testified at trial, denying the allegations against him. The jury, however, found him guilty of rape, incest, aggravated child molestation, aggravated sodomy, three counts of child molestation, three counts of sexual battery, and cruelty to children in the first degree.

On appeal, Priddy asserts that the evidence was insufficient to support his convictions because "[a] conviction based on the uncorroborated testimony of [the victim] is just as shaky as one based solely on the uncorroborated testimony of an accomplice."[1] However, it is well settled that the testimony of a victim does not need corroboration and is sufficient, standing alone, to support a conviction. See *Jackson v. State*, 334 Ga. App. 469, 473 (2) (779 SE2d 700) (2015) (victim's testimony alone was sufficient to sustain a conviction for forcible rape); *Davenport v. State*, 316 Ga.

---

[1] Priddy raises no distinct challenges to any specific elements of any individual crimes, but rather, in his largely conclusory argument on this issue, raises only general challenges to the State's failure to corroborate the victim's testimony, which, as a result, is the only issue we address in this enumeration.

App. 234, 236 (1) (a) (729 SE2d 442) (2012) (victim's uncorroborated testimony was sufficient to sustain a conviction for incest); *McGhee v. State*, 263 Ga. App. 762, 763 (1) (589 SE2d 333) (2003) (victim's testimony, standing alone, was sufficient to sustain convictions for child molestation, sexual battery, and other crimes). In fact, this Court has concluded that "[t]he testimony of a victim of child molestation or aggravated child molestation need not be corroborated. The testimony of one witness is generally sufficient to establish a fact." *Smith v. State*, 320 Ga. App. 408, 410 (1) (a) (740 SE2d 174) (2013) (citations and punctuation omitted).

The record in this case contains direct evidence – in the form of the victim's testimony – supporting the jury's verdict. "Physical evidence of the sexual abuse was not required." *Torres*, 353 Ga. App. at 476-477 (1). Moreover, the State introduced additional evidence of Priddy's guilt at trial. For example, the victim's mother and grandmother both testified concerning admissions and incriminating statements Priddy made to them, and text messages between the victim's mother and Priddy – in which Priddy acknowledged that he had a problem and needed counseling, stated he did not want to go to jail, and promised to make amends and be there when the victim was ready to talk to him – were admitted into evidence.

Although Priddy argues that many of the facts to which the victim testified at trial were inconsistent with her forensic interview and testimony from other family members, "it is the function of the jury, rather than this Court, to weigh the evidence, resolve conflicts in the lay and expert testimony, and draw reasonable inferences from the evidence." *Torres*, 353 Ga. App. at 477 (1) (citation and punctuation omitted). In this case, the evidence was sufficient to sustain Priddy's convictions on all counts, and the trial court did not err in denying his motion for a new trial on this ground. See OCGA §§ 16-6-1 (defining rape); 16-6-22 (defining incest); 16-6-4 (defining both child molestation and aggravated child molestation); 16-6-2 (defining aggravated sodomy); 16-6-22.1 (defining sexual battery); 16-5-70 (defining cruelty to children in the first degree).

2. Priddy asserts that the trial court erred in denying his motion in limine to pierce the Rape Shield Statute, OCGA § 24-4-412. According to Priddy, he should have been allowed to (a) question the victim about an allegation of sexual abuse she made against another man when she was seven years old and (b) cross-examine the victim and present evidence of an incident where she was disciplined by Priddy when he allegedly discovered she had sex with a boy at Priddy's house. Priddy argues that this evidence supported his defense that the victim either subconsciously conflated

the prior abuse or fabricated her allegations against Priddy because she was angry at him for disciplining her. We find that the trial court did not abuse its discretion in excluding the evidence sought to be introduced by Priddy.

The State moved in limine to prohibit Priddy from introducing evidence precluded by the Rape Shield Statute, and Priddy moved in limine to pierce the Rape Shield Statute and introduce the evidence discussed above. During the hearing on the motions, Priddy's trial counsel stated that, with respect to the second issue, they sought to introduce evidence only that Priddy disciplined the victim because he found her in a room with a boy, without detailing any alleged sexual conduct. The State argued that testimony about a boy being in the victim's room would insinuate that she was having sex. The trial court initially reserved ruling on the motions. Thereafter, the court heard argument regarding the admission of the evidence on two later occasions prior to opening statements, and ultimately the court granted the State's motion and denied Priddy's motion. Priddy renewed his motion to pierce the Rape Shield Statute before cross-examining the victim, and the trial court stood by its prior decision not to admit the evidence.

"The trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." *Torres*, 353 Ga. App. at 478 (3)

7

(citation and punctuation omitted). Because neither evidence of the alleged prior sexual incident that occurred when the victim was seven years old nor evidence of an alleged sexual encounter with a boy that occurred while she was living with Priddy fit into a statutory exception contained in the applicable Rape Shield Statute, we discern no abuse of discretion by the trial court in excluding evidence of those incidents in this case.

The Georgia Rape Shield Statute applicable to this case provided, in pertinent part:

> In any prosecution for rape in violation of Code Section 16-6-1; . . . aggravated sodomy or sodomy in violation of Code Section 16-6-2; . . . aggravated child molestation or child molestation in violation of Code Section 16-6-4; incest in violation of Code Section 16-6-22; [or] sexual battery in violation of Code Section 16-6-22.1 . . ., evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section.

OCGA § 24-4-412 (a) (2017).[2] The statute contained a single statutory exception to the above prohibition:

> [E]vidence relating to the past sexual behavior of the complaining witness may be introduced if the court . . . finds that the past sexual behavior directly involved the participation of the accused and finds that the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the complaining witness consented to the conduct complained of in the prosecution.

OCGA § 24-4-412 (b) (2017). "Under the plain language of this version of OCGA § 24-4-412, evidence of a complaining witness's past sexual behavior was admissible only if the behavior directly involved the defendant and was relevant to the issue of consent. There was no other exception to the evidentiary restrictions of the Rape Shield Statute." *Stevens v. State*, 356 Ga. App. 847, 853 (3) (847 SE2d 649) (2020) (deciding case under the pre-revised version of the Rape Shield Statute) (citation omitted).

---

[2] OCGA § 24-4-412 was substantially revised by the General Assembly, effective April 18, 2019. See Ga. L. 2019, p. 81, §§ 5, 9. The revised version of the Rape Shield Statute applies "to any motion made or hearing or trial commenced on or after the effective date of this Act" and thus is inapplicable in the present case, where both the motion and trial occurred in 2017. Ga. L. 2019, p. 81, § 8.

9

In the instant case, Priddy did not seek to question the victim or present evidence about sexual behavior directly involving him or for any reason related to consent. He rather sought to (a) question the victim about an allegation of sexual abuse she made against another man when she was seven years old and (b) cross-examine the victim and present evidence of an incident where she was disciplined by Priddy when he allegedly discovered she had sex with a boy at Priddy's house.[3] Such evidence did not fall within the sole statutory exception of the applicable Rape Shield Statute.[4] In addition, Priddy's argument that evidence about the incidents was admissible for other purposes, including proof of the victim's motive or state of mind, is without merit.[5] See *Chisholm v. State*, 355 Ga. App. 19, 22 (1) (842 SE2d 327) (2020) (defendant's argument that questions pertaining to the victim's nonchasity were admissible for other purposes, including impeachment, credibility, and evidence

---

[3] Priddy was permitted to present evidence that he disciplined the victim, but not evidence that the victim was found alone in a room with a boy.

[4] Priddy does not assert or argue on appeal that any prior sexual abuse perpetrated on the victim falls outside the ambit of "past sexual behavior of the complaining witness." He, therefore, has waived appellate review of any challenge to the exclusion of the evidence at issue here on this ground.

[5] We note that the cases Priddy cites in support of this argument each pre-date the Rape Shield Statute.

10

of motive and state of mind of both the victim and the defendant, was found to be without merit under the pre-revised version of the Rape Shield Statute). Both this Court and the Supreme Court repeatedly have concluded that unless evidence of a victim's past sexual behavior fell within the sole statutory exception in the pre-revised version of the Rape Shield Statute, it was inadmissible. See *Torres*, 353 Ga. App. at 480 (3) ("[T]he [pre-revised version of the] Rape Shield Statute [barred] evidence of past sexual behavior that [did] not fit within the aforementioned statutory exception, irrespective of whether the defense [sought] to introduce the prior sexual behavior as substantive evidence or for impeachment."); see also *White v. State*, 305 Ga. 111, 118 (2) (823 SE2d 794) (2019) (under the pre-revised version of the Rape Shield Statute, "the plain language of OCGA § 24-4-412 does not support the conclusion that evidence of a complaining witness's past sexual behavior would be admissible if it were relevant to an issue other than consent."). The trial court acted within its discretion in refusing to allow Priddy to pierce the Rape Shield Statute.

3. Priddy next contends that he received ineffective assistance of trial counsel because his attorneys (a) called an expert witness who did not have sufficient qualifications, training, or expertise, (b) failed to timely file a motion in limine to

pierce the Rape Shield Statute, and (c) failed to request that jurors be sequestered for individual voir dire.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), Priddy must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Sullivan v. State*, 308 Ga. 508, 510 (2) (842 SE2d 5) (2020). To show deficient performance, Priddy must "demonstrate that his attorney[s] performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Id. (citation and punctuation omitted).

> This is no easy showing, as the law recognizes a "strong presumption" that counsel performed reasonably, and [the a]ppellant bears the burden of overcoming this presumption. To carry this burden, he must show that no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

*Brown v. State*, 302 Ga. 454, 457 (2) (807 SE2d 369) (2017) (citations and punctuation omitted). See also *Jones v. State*, 318 Ga. App. 342, 346 (3) (733 SE2d

12

400) (2012) (defendant must show by clear and convincing evidence that the performance of his lawyer was not within the range of reasonable professional lawyering). To show prejudice, Priddy must establish a reasonable probability that, but for his counsel's deficient performance, the result of the proceeding would have been different. *Sullivan*, 308 Ga. at 510 (2). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (citation and punctuation omitted). If an appellant fails to satisfy either prong of the *Strickland* test, it is not incumbent upon this Court to examine the other prong. Id.

Whether a trial attorney renders constitutionally ineffective assistance is a mixed question of law and fact. *Sullivan*, 308 Ga. at 510 (2). Appellate courts affirm a trial court's factual findings unless clearly erroneous, but we independently apply the legal principles to those facts. Id. at 510-511 (2). Here, the trial court found that Priddy's counsel rendered effective assistance. After reviewing Priddy's claims in accordance with the above standards, we conclude that Priddy has not met his burden of demonstrating that his trial counsel was ineffective.

(a) Priddy first argues that his trial counsel was ineffective by calling an expert witness who did not have sufficient qualifications, training, or expertise. According to Priddy, his lead counsel hired the expert "to critique the [victim's] forensic

13

interview and expose [the victim's] gaps in memory as fabrications rather than evidence of sexual abuse." However, the expert "fell apart" under cross-examination, and co-counsel testified during the hearing on Priddy's motion for a new trial that she believed the expert "ended up hurting . . . [Priddy's] case because [of] the way he testified." (Punctuation omitted.) Co-counsel further testified that she would not have called the expert to testify because she did not think it "was the best option." Priddy asserts that the expert was not merely less qualified, but was actually unqualified to help the defense. Priddy, however, has not shown that trial counsel's decision to call the expert to testify constituted deficient performance.

"[T]he decision whether to present an expert witness, like other decisions about which defense witnesses to call, is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance." *Sullivan*, 308 Ga. at 512 (2) (b) (citation and punctuation omitted). "Where a defendant contends a strategic decision constitutes deficient performance, [he] must show that no competent attorney, under similar circumstances, would have made it." *Martin v. State*, 306 Ga. 747, 751 (3) (a) (833 SE2d 122) (2019) (citation and punctuation omitted). "Moreover, a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Sullivan*, 308 Ga. at 512-513 (2) (b) (citation and punctuation omitted).

Here, Priddy's lead counsel testified during the hearing on Priddy's motion for a new trial that the defense expert was hired to address the victim's forensic interview and provide assistance with "general psychology." Lead counsel further explained that the expert also was retained to address the victim's memory as it related to her prior abuse, but this goal could not be accomplished after the trial court denied the defense's motion in limine to pierce the Rape Shield Statute. Although Priddy's co-counsel did not believe the expert's testimony helped the defense, she acknowledged that one of the reasons he was retained was to look at the forensic interview video and address any "red flags." In addition, co-counsel admitted that the public defender's office "quite often" used the defense expert hired in this case to testify about forensic interviews in child sex abuse cases.

The defense expert testified at trial that the victim's version of the events and the circumstances surrounding the outcry to her mother raised "red flags." He also testified about suggestibility and how a victim's memory can be tainted, specifically pointing out that the forensic interviewer in this case used leading and repeated questions, which could "cause a child to say things that [were] not factually true, to

15

bend, to yield to that pressure." The expert mentioned additional "red flags" in this case based on the interviewer's request that the victim "help" her, which potentially pressured and motivated the victim to agree with the interviewer's leading questions. According to the expert, false accusations could be made even in "good interviews." Priddy's lead counsel relied upon the expert's testimony to argue that the jury should not believe the victim's outcry given the circumstances under which it was made.

Notwithstanding co-counsel's testimony, Priddy has not shown that – given the facts and circumstances of this case – "no competent attorney, under similar circumstances," would have called the expert to testify. *Martin*, 306 Ga. at 751 (3) (a) (citation and punctuation omitted).

> There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. While other counsel, had they represented appellant, may have exercised different judgment, the fact that the trial counsel chose to try the case in the manner in which it was tried and made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel.

16

*Deleon-Alvarez v. State*, 324 Ga. App. 694, 711-712 (9) (751 SE2d 497) (2013) (citations and punctuation omitted).

In the case primarily relied upon by Priddy on this issue, *Hinton v. Alabama*, 571 U. S. 263, 273 (II) (A) (134 SCt 1081, 188 LE2d 1) (2014), defense counsel called an expert he believed was inadequate due to his mistaken assumption that he could not obtain additional money for expert fees. Here, there was no similar mistaken assumption. Lead counsel in the present case believed the expert's testimony would be beneficial to accomplish the goals of the defense. The fact that the expert may have "fallen apart" or that co-counsel might have chosen a different trial strategy does not render lead counsel's belief in that regard unreasonable or otherwise equate to ineffective assistance of counsel. See *Gillison v. State*, 254 Ga. App. 232, 235 (4) (a) (561 SE2d 879) (2002) ("Trial strategy and tactics do not equate with ineffective assistance of counsel.") (citation and punctuation omitted); see also *Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight.") (citation and punctuation omitted).

17

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Strickland*, 466 U. S. at 689 (III) (A). Viewed without the "distorting effects of hindsight," id., Priddy has failed to show that his lead counsel's decision to call the expert in this case was deficient. See *Sullivan*, 308 Ga. at 512-513 (2) (b); *Deleon-Alvarez*, 324 Ga. App. at 711-712 (9).

(b) Priddy next asserts that his trial counsel rendered ineffective assistance by failing to timely file a motion in limine to pierce the Rape Shield Statute. This claim fails for a number of reasons.

First, Priddy waived this claim by failing to assert it at the earliest practicable moment. See *Upshaw v. State*, 257 Ga. App. 199, 201 (4) (570 SE2d 640) (2002) ("It is well settled that a defendant must raise all allegations of ineffective assistance of counsel as soon as practicable."). The record here shows that Priddy both had the opportunity to raise this claim of ineffective assistance of trial counsel in his amended motions for new trial and actually raised other ineffective assistance claims, but not

18

the specific claim he now seeks to raise on appeal. He, therefore, has waived this ineffective assistance claim. See *Womack v. State*, 273 Ga. App. 300, 307 (4) (614 SE2d 909) (2005) ("Where the issue of trial counsel's effectiveness has been raised on motion for new trial, any claims of ineffective assistance by trial counsel not raised at that time are waived.") (citations and punctuation omitted).

Second, it is clear that the trial court considered and rejected Priddy's motion on the merits. Accordingly, Priddy can not demonstrate prejudice regardless of whether the motion was timely filed. See generally *Sullivan*, 308 Ga. at 510 (2).

Finally, given our conclusion in Division 2, supra, that the trial court did not abuse its discretion in excluding the evidence Priddy sought to introduce by piercing the Rape Shield Statute, Priddy similarly failed to demonstrate that his trial counsel rendered ineffective assistance in this regard. See *Seals v. State*, 350 Ga. App. 787, 797 (3) (b) (830 SE2d 315) (2019) (trial counsel's failure to make a meritless objection cannot be the basis for a claim of ineffective assistance); *Chamberlain v. State*, 347 Ga. App. 775, 783 (3) (b) (819 SE2d 303) (2018) (same).

(c) Priddy asserts that his trial counsel was ineffective by failing to request that jurors be sequestered for individual voir dire. However, as with his argument above, Priddy failed to raise this claim of ineffective assistance of counsel in his motions for

19

new trial, as amended, despite having the opportunity to do so. Priddy, therefore, has waived this ineffective assistance claim. See *Womack*, 273 Ga. App. at 307 (4).

4. Priddy maintains that the trial court erred by "failing to sequester jurors for individual voir dire." According to Priddy, multiple jurors described personal experiences and beliefs in front of the entire panel, and such responses created "erroneous impressions about the presumption of innocence and the burden of proof." We find that Priddy once again waived any error in this regard.

Georgia law provides that in criminal cases, the prosecution and the defense "shall have the right to an individual examination of each prospective juror from which the jury is to be selected prior to interposing a challenge." OCGA § 15-12-133. That Code section, however, does not mandate sequestered or isolated voir dire. Id.; *Mathis v. State*, 249 Ga. 454, 455 (1) (291 SE2d 489) (1982) (addressing Code Ann. § 59-705, a prior version of the statute). "Defendants who desire sequestered individual examination of members of the jury panel must make a request, which is subject to the discretion of the trial court[, a]nd a showing of prejudice from denial is necessary to show an abuse of discretion." *Kerdpoka v. State*, 314 Ga. App. 400, 401 (1) (724 SE2d 419) (2012) (citation and punctuation omitted). Furthermore, this Court previously has held that "[w]hen a panel of potential jurors is exposed to a

prejudicial remark or question, the remedies are to request a postponement until a new panel of jurors can be selected or to challenge the poll of the jury." *Mitchell v. State*, 284 Ga. App. 209, 209 (1) (644 SE2d 147) (2007).

Here, Priddy admits that his trial counsel failed to request that potential jurors be sequestered for individual voir dire. Trial counsel likewise failed to (a) object to any purportedly prejudicial remarks made by specific panel members or (b) request an appropriate remedy when the panel of potential jurors was exposed to allegedly prejudicial remarks made by a panel member. Priddy thus waived any error by failing to object at trial. See *Primas v. State*, 231 Ga. App. 861, 862 (2) (501 SE2d 28) (1998) ("To raise an issue as to error in the conducting of the voir dire, objection must be made in the trial court to preserve the issue for appeal.") (citation and punctuation omitted); accord *Davis v. State*, 237 Ga. App. 508, 508 (1) (515 SE2d 646) (1999). Accordingly, the trial court did not err in denying Priddy's motion for a new trial on this basis.

5. In his final enumeration of error, Priddy asserts that the trial court erred by sentencing him to life in prison for aggravated sodomy. According to Priddy, he should have received a split sentence on this offense because it qualified as a "sexual offense" subject to sentencing under OCGA § 17-10-6.2. This argument lacks merit.

21

Under OCGA § 16-6-2 (b) (2), "[a] person convicted of the offense of aggravated sodomy shall be punished by imprisonment for life *or* by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life." (Emphasis supplied.) Priddy's sentence complied with the statute. Contrary to Priddy's argument, aggravated sodomy is not listed as one of the ten "sexual offenses" subject to the split sentence requirement in OCGA § 17-10-6.2 (a). Instead, aggravated sodomy is listed in OCGA § 17-10-6.1 (a) (6) as a "serious violent felony," which does not include a split sentence requirement where, as here, a sentence of life in prison is imposed. OCGA § 17-10-6.1 (b) (2) (D).

*Judgment affirmed. McFadden, P. J., and Markle, J., concur.*